127 511<br>f128 364

The Monarch Mfg. Co. v. Omaha, Council Bluffs &
Suburban Railway Co., Appellant.

**Negligence:** OVERFLOW OF SURFACE WATER: GRADING OF STREETS AND
1   LOTS: EVIDENCE. Where a lot owner has brought his property
up to the street grade at the lot line, although other portions
of the property are below grade, a city or anyone acting in
its stead is not relieved from liability for an injury caused
by negligently obstructing surface water in the street thereby
turning it onto plaintiff's premises. Evidence reviewed and
held to support a finding that the plaintiff's lot line at the
time of the damage was at grade.

**Evidence:** CONCLUSION OF WITNESS. Where a witness had testified
2   that plaintiff's lots had been brought to grade on the street
line and that the flow of surface water in the street was ob-
structed, turning it onto plaintiff's premises causing damage
thereby, an inquiry on cross examination whether if the lots
had been brought to grade before this flood the accident could
have happened, was properly excluded as immaterial.

**Evidence:** SIMILAR INJURIES. Evidence as to injury from overflow
3   of surface water to property situated on another street than
the property in question, where the same was not confined to
any locality and it was not shown that the conditions were
the same and the property similarly situated, was inadmissible;
and if offered to show the unusual character of the storm was
objectionable because no basis of comparison was proven.

**Evidence:** WEATHER CONDITIONS. The record of observations of
4   temperature and rainfall voluntarily made and not preserved
by any requirement of law or regulation of the weather

bureau nor verified by the person making the same, are not admissible to show conditions of the weather.

**Damage:** PLEADING. A petition alleging damage to merchandise is sufficient to authorize recovery for property totally destroyed.

*Appeal from Pottawattamie District Court.*— HON. N. W. MACEY, Judge.

WEDNESDAY, MAY 10, 1905.

ACTION for damages alleged to have been occasioned by negligently obstructing water in the street, thereby causing it to flow on plaintiff's premises. Judgment for plaintiff, from which defendant appeals.— *Reversed.*

*Harl & Tinley,* for appellant.

*Saunders & Stuart,* for appellee.

LADD, J.— Some years prior to 1900, Sixth street, in Council Bluffs, had been brought to grade and curbed, but not paved. It was intersected at right angles by Eleventh street, along which were several railroad tracks, running in an easterly and westerly direction, several inches above the grade of Sixth street. A storm sewer extended down Sixth street to Fourteenth avenue, where it emptied into a larger sewer, through which the water flowed into Indian creek. At the intersection of Sixth street and Eleventh avenue were catch-basins connected with the main sewer by eight-inch pipes, intended to take away the surface water. The plaintiff owned the lots facing east on Sixth street immediately north of Eleventh avenue. The building was next to the avenue, but fronted thirty-nine feet on Sixth street, with a wing to the north twenty-four feet square, and was occupied as a factory of axle grease and other lubricants. Shortly before July 15, 1900, the plaintiff had emptied a car load of oil in a tank located in the basement, and had also there stored a large

quantity of axle grease and other materials. In the after-noon and evening of that day there was a heavy rainfall, and the water, as the evidence tended to show, overflowed Sixth street through plaintiff's driveway into its basement, thereby causing great damage. This is attributed in the petition to negligence on the part of defendant. It had laid a double track for street car service along Sixth street, and, in so doing, had piled dirt in the gutters and over the catch-basins mentioned; and it is contended, on the one hand, that but for these obstructions the water would have drained off without reaching plaintiff's lots, and, on the other, that water fell in such extraordinary quantities that the injury would have occurred even had there been no such obstructions. The cause was submitted on the theory that if the jury found plaintiff's premises had been brought up to grade at the lot line, and that the injury would not have occurred but for the negligent covering of the catch-basins, damages should be allowed.

I.    Appellant insists: First, that the evidence shows conclusively that the lots were not up to grade at the line; and, second, that, even if they were, the entire premises

1. NEGLIGENCE: overflow of surface water; grading of streets and lots; evidence.

should have been so improved to entitle plaintiff to recover. The top of the curbing was at grade, and, according to the testimony of the county surveyor, who examined the premises and made meas-urements a few days after the injury, the brick sidewalk in front slanted upward therefrom to the lot line, so that the inner edge was three and one-half inches above grade, and the driveway, fourteen feet and ten inches wide, showed evidences of erosion, but at the lowest place was only thirteen one hundredths of an inch below the top of the curbing. Another witness, familiar with the location, stated that the driveway had been filled with cinders even with the side-walk, and that nearly four inches in depth had been removed by the action of the waters. This was enough to support the finding of the jury that the lot line was at grade, even

though a competent engineer testified that he had found the driveway very much below grade some months later.

But portions of the lots and the basement were below grade, and appellant contends that for this reason no recovery should be had, for that, in failing to improve the entire premises to grade, plaintiff was guilty of negligence contributing to the injury. But no duty of bringing his property to the grade of the street rests on the abutting lot owner. The law permits the municipality to establish grades and improve its streets accordingly, and unless, in accomplishing these purposes, it is guilty of some negligence causing injury, no liability attaches, for that no more has been done than the law authorizes. In grading streets the city may assume that the abutting owner will improve his property in conformity therewith in order to secure the beneficial enjoyment of both, and in measuring its duty this is always to be taken into consideration, and, if no injury would have resulted had the abutting property been so improved, there can be no recovery. But this is on the ground that the city has not exceeded its powers nor violated any duty owing to the lot owner, and not, as is contended, because of any negligence on the part of the latter. It is a case of *damnum absque injuria*. *Knostman & Peterson Furniture Co. v. City of Davenport,* 99 Iowa, 589; *Hoffman v. City of Muscatine,* 113 Iowa, 332.

But to improve the lot in conformity to the grade does not require that the entire surface be raised to the same level as the street. It may better serve the purposes of the owner if portions, such as the basement, are below grade. To conform to the grade means no more than that the premises shall be so improved as to avoid any injuries incident to the grading of the street, and if, notwithstanding such improvement, they are injured through the negligence of the city or some one acting in its stead, there is no tenable ground upon which denial of recovery may be based. In the instant case the evidence tended to show that the lots had been brought to grade at the lot line. This furnished as effective-

a barrier to surface water as though the entire surface had been raised, and, but for the negligent obstruction of the water by defendant, would, under the jury's finding, have protected plaintiff's property from the injury complained of.  Expressions may be found in some cases not entirely consistent with what we have said, but what has been determined in the decisions gathered in the authorities cited are in harmony therewith.

II.   One Searle, after testifying that the catch-basins had been covered by defendant, that the driveway was at grade, and that the water had flowed through it into the basement, was asked, on cross-examination, whether,

2. EVIDENCE: conclusion witness.

of if the lots " had been brought to the grade established by the city before this flood, this accident could have happened."  An objection as immaterial and not cross-examination was sustained.   If the question was intended to refer to every portion of the lots at grade, the inquiry was immaterial, as appears from what we have said; if merely to that part essential to keeping out the surface water from the street, then it called for a repetition in the way of a conclusion of the facts which the witness had recited. Appellant has argued the exception to the ruling on the theory that an answer might have contradicted the inference to be drawn from the facts stated by the witness in his direct examination.   See 3 Encyclopedia of Evidence, 835, 838; *Wilson v. Wagar*, 26 Mich. 452; *People v. Fitzgerald*, 156 N. Y. 253 (50 N. E. Rep. 846, 851).   But, as seen, this is not correct, for he had testified that the lots were at grade in so far as essential to their protection.

III.   One Barret testified in chief that the storm was unusual and the water stood in the streets, and on redirect examination was asked:   " Do you remember that west of Seventh street many families were driven from their homes after night and obliged to seek shelter with neighbors and friends ? "   An objection thereto was sustained, and properly so — First, be-

3. EVIDENCE: similar injuries.

cause the portion of Seventh street contemplated was not shown, nor that the conditions were like those of Sixth street; and second, because the question called for an account of consequences to individuals, and not to this or other property similarly situated. If offered as tending to show the unusual character of the storm, no basis of comparison was proven, as, for instance, the effect produced on individuals similarly situated by other storms.

IV. As tending to show that the injury was to be attributed to the obstructions created by defendant, rather than an excessive and unusual fall of rain, as contended by it, the plaintiff introduced in evidence certain alleged records of daily observations of the temperature and precipitation, purporting to have been made at the freight depot of the Chicago, Rock Island & Pacific Railroad Company in Council Bluffs from 1896 to December 31, 1900. During that period the depot had been a voluntary observation station of the Department of Agriculture. One Denton had been the railroad company's agent up to 1900, when he was succeeded by Rishel, and the latter by Gay some time after July of that year. Seven clerks were employed, and the observations were made by the agent, or by some of the clerks under his direction. Copies of the record of these during the month, in triplicate, were made by the use of carbon paper, and two sent to the bureau at Des Moines, which was the section center, and one was retained. When Gay took possession of the station as agent of the railroad company, his " attention was called to these weather reports by his predecessor." The copies retained were not preserved because of any requirement of the law or of the railroad company, but in pursuance of the recommendation of the chief of the government Weather Bureau. In other words, their preservation was not exacted in the performance of any duty owing to the railroad company or to the government. Everything done was purely voluntary, and there was no identification of the reports as accurate mem-

4. EVIDENCE: weather conditions.

oranda of the observations by those making them or by others. In these circumstances, we think the evidence should have been rejected. They were not admissible as private memoranda, because not verified by the person making them or otherwise. See *State v. Brady,* 100 Iowa, 191. They were not admissible as records, because no duty of preserving them devolved upon the employés of the railroad company. Had their preservation been required by some regulation of the Weather Bureau, a different question would have been presented. None such has been called to our attention, the chief of that bureau being content to " urgently recommend that those who undertake to conduct observations endeavor to provide, as far as practicable, for an unbroken series." His object was merely to increase interest, but not to have copies of the report preserved for any save private use of the voluntary observer.

That the official record of meteorological observations are admissible in evidence is not an open question in this State. *Huston v. City of Council Bluffs,* 101 Iowa, 33. See also, *Scott v. Astoria Ry. Co.,* 43 Or. 26 (72 Pac. Rep. 594, 62 L. R. A. 543); *Mears v. Ry.,* 75 Conn. 171 (52 Atl. Rep. 610, 56 L. R. A. 884); *Moore v. Gaus,* 113 Mo. 98 (20 S. W. Rep. 975). See Wigmore on Evidence, section 1639. This is on the ground that they are required to be kept by public officers in the performance of their duties as such. In *Knott v. Ry.,* 98 N. C. 73 (3 S. E. Rep. 735, 2 Am. St. Rep. 321), and *Village of Evanston v. Gunn,* 99 U. S. 660, 25 L. Ed. 306, relied on by plaintiff, the records were verified by the persons making them. *Sisson v. Ry.,* 14 Mich. 489 (90 Am. Dec. 252), as explained by *Cleveland & Toledo R. Co. v. Perkins,* 17 Mich. 297, merely holds that a witness may testify to value from information derived from market reports published in newspapers, not that the reports as so published were admissible. The court erred in receiving this evidence.

V. The petition alleged that the water " damaged a large amount of merchandise." On the measure of damages

the court instructed the jury to allow plaintiff for the im-

5. DAMAGE: pleading.    pairment of the property injured, and also the market value of that destroyed. Appellant excepts on the ground that the allegation of the petition covered that injured, but not property destroyed. The distinction is too fine for practical use. If destroyed, property is damaged to the extent of its value. See *Fay v. Parker*, 53 N. H. 342 (16 Am. Rep. 270).— *Reversed.*