HARRIET R. HEFFORD, Plaintiff, *v.* SAMUEL LICHTMAN, Defendant.

(Supreme Court, Erie Equity Term, November, 1921.)

Specific performance — oral contract for sale of land — insufficient memorandum under Statute of Frauds — when earnest money cannot be recovered.

Where in a vendor's action to compel specific performance of a land contract which was never signed by either party, it appears that the vendee refused to complete the purchase upon a claim that the proposed contract contained certain provisions not covered in the oral agreement, which under the Statute of Frauds was not binding, the complaint will be dismissed.

A statement in a letter from the defendant accompanying the proposed contract, " I wish you would kindly sign the copy of the contract and return to me with a check for $4,000, upon receipt of which I will deliver a signed contract," was not a note or memorandum sufficient to satisfy the Statute of Frauds.

The defendant must fail in his demand, by way of counter-claim, for the repayment of the earnest money and plaintiff is entitled to retain the same.

The oral agreement, which was for the sale and purchase of the " Westgate Apartments " without particular description by metes and bounds, was tantamount to an agreement to take the property just as it stood, with an existing party wall, and the agreement in relation thereto is not such a defect in title as justified its rejection.

When at the time plaintiff tendered a deed of the property to defendant his objection as to the party wall had been met, but he still refused to carry out the oral agreement, he was forced to stand practically on the proposition that the contract to purchase was not enforceable, because no note or memorandum in writing had been signed.

ACTION by vendor to compel the specific performance of an alleged contract for the sale of certain real estate.

Lewis & Carroll, for plaintiff.

Isador Setel, for defendant.

WHEELER, J. The plaintiff is the owner of certain real property known as the " Westgate Apartments " in the city of Buffalo, N. Y. The property was placed for sale in the hands of real estate agents through her duly authorized attorney. Negotiations were had with the defendant, and it is claimed terms of a sale and purchase of the property were agreed upon orally between the defendant and the agent of the plaintiff. Thereafter the defendant's son, who, it is claimed, had authority to represent his father and make a contract for him, went to the office of Mr. Lewis, the attorney for Mrs. Hefford. There, it is claimed, Mr. Lewis again stated the purchase price to be paid, to wit, $90,000, of which $20,000 was to be in cash paid at the time of closing the deal, the assumption by the purchasers of an existing first mortgage on the property of $52,500, and the delivery of a second mortgage of $17,500, payable in annual installments of $2,500 each year, the whole of the principal sum to be due in five years, and a certain county tax to be paid by the purchaser.

It is claimed Mr. Lichtman's son orally agreed to these terms, as stated by Mr. Lewis, whereupon the

son, representing his father, delivered to Mr. Lewis a check for $1,000 previously given him, and signed by his father. Thereupon Mr. Lewis, representing Mrs. Hefford, signed and delivered a receipt, of which the following is a copy:

"BUFFALO, N. Y., *Jan.* 5, 1919.

"Received of S. Lichtman's Sons $1000.00 One thousand Dollars, on purchase of Westgate Apartments for $90,000.00.

"(Signed)    L. L. LEWIS, JR."

This receipt was delivered by the son to his father, the defendant. It is further claimed, and substantiated by the evidence, that at the time of the talk above recited and the payment of the $1,000, it was understood and agreed that Mr. Lewis was to prepare a formal contract embodying all the terms and conditions agreed upon.

A contract was thereafter prepared by Mr. Lewis, accompanied by a letter, of which letter the annexed is a copy:

"BUFFALO, N. Y., *January 8th,* 1919.

"MR. SAMUEL LICHTMAN, ·

"9 Randall Street, Buffalo, N. Y.:

"DEAR SIR.— At the request of your son I am sending you herewith contract for the purchase of the Westgate apartment.

"I have already received $1000 on the purchase price of this land and before the contract is delivered I am to receive $4000 more.

"I have therefore put into the contract that $5000 will be received at the time of the delivery of the contract.

"You will note a change on page two where I have stricken out the words 'this instrument' and put in the words 'this deed' and on page three have changed the word 'same' to the word 'sale.'

" I wish you would kindly sign the copy of the contract and return to me with check for $4000 upon receipt of which I will deliver a signed contract.

" Very truly yours, (Signed) L. L. LEWIS, JR."

The contract set out in detail the terms of the proposed contract of sale substantially, if not exactly, in accordance with the oral terms previously agreed on.

For the purposes of this case, we shall assume the proposed written contract did in fact exactly comply with the oral agreement, although the defendant contends there were incorporated into it certain things not previously agreed upon, which rendered the contract objectionable. The proposed contract, however, was never signed by either the plaintiff or defendant. The defendant raised objection to it and declined to sign, and has refused to complete the purchase, claiming the proposed contract contained certain provisions not covered in the oral agreement, and that by reason of the statute, no binding agreement ever was made.

The plaintiff thereupon began this action to compel a specific performance by the defendant, who, at the outset, insists that no valid or legal contract was ever entered into, which is capable of enforcement, by reason of the provisions of the statute declaring: " a contract * * * for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agents." Real Prop. Law, § 259.

It is the rule that to entitle a party to the specific performance of a contract, " A note or memorandum sufficient to take a contract of sale out of the operation of the Statute of Frauds, must state the whole

contract with reasonable certainty so that the substance thereof may be made to appear from the writing itself without recourse to parol evidence.'' *Mentz* v. *Newwitter,* 122 N. Y. 491.

It is not claimed that the receipt for the payment of the $1,000 meets this requirement. It certainly does not. But it is urged that the proposed written contract, construed in connection with Mr. Lewis' letter forwarding it, meets all requirements and takes the case out of the statute.

But the proposed contract was not even signed. The concluding paragraph of the letter accompanying the contract says: '' I wish you would kindly sign the copy of the contract and return to me with check for $4,000, upon receipt of which I will deliver a signed contract.'' Consequently there never was any note or memorandum signed within the provisions of the statute in question. Had the proposed contract in fact been signed by the plaintiff's agent, even then we are of the opinion that the contract could not be enforced against the defendant. In legal effect there never was any contract or agreement between the parties — no legal contract. There may have been an oral agreement, but such an agreement is void in law, and when the receipt for the $1,000 was given the case stood just as though no agreement whatever existed between the parties.

It was not within the power of the seller or owner to bind the contemplated purchaser to a contract which the seller might thereafter draw and mail him on the theory that in so doing he was but expressing the oral agreement theretofore made. It can be seen to what consequences such a doctrine, if sustained, would lead. A dispute arises in such a case, as has in this, whether the written contract tendered correctly embodies the provisions of the oral agreement. The

parties are, therefore, necessarily remitted to oral testimony to establish what the original understanding was, and the parties are compelled to establish their claims by resort to parol evidence, the very thing the statute condemns.

It may well be that contracts for. the sale of real property are valid although signed by only the seller, as the statute requires, but to sustain such a contract there must be a delivery and acceptance of the written note or memorandum. The minds of the parties must meet on the very written instrument signed by the seller.

There is no contention that the defendant here ever accepted or in any way assented to the written contract tendered him. On the contrary, the evidence is that he declined to accept or sign the paper. Certainly the vendor could not impose terms on the contemplated purchaser against his will.

I am, therefore, of the opinion the plaintiff must fail in her action for specific performance.

The defendant, by counterclaim, asks to recover from the plaintiff the $1,000 paid in the first instance.

I am of the opinion the defendant must fail in his demand for the repayment of the earnest money, and that the plaintiff has the right to retain the $1,000 paid by the defendant.

Had the contemplated sale fallen through for defect in the title, or the refusal of the seller to perform, and the purchaser stood ready and willing to fulfill, then the defendant would have had the right to the repayment of the money.

It is true that one of the grounds alleged for the failure of the defendant to carry out the oral bargain made was that the northerly wall of the apartment house erected on the lot was a party wall by virtue of an agreement with the adjoining lot owner on the

north, one-half of said wall standing on the property of each. The purchaser objected to the title, on the ground that this constituted a defect in title justifying its rejection.

It should be noted that the oral agreement was for the sale and purchase of the "Westgate Apartments," without particular description by metes and bounds. It would seem that such an agreement was tantamount to an agreement to buy just as the property stood with the existing party wall. I am, however, of the opinion that this party wall agreement was not such a defect in the title as justified its rejection as bad. The wall in question is an existing one, as in the case of *Hayden* v. *Pinchot,* 172 App. Div. 102, where it was held such a wall did not make a title defective.

If, however, the court is in error in this view of the matter, and the party wall agreement in fact and in law rendered the plaintiff's title objectionable, then the plaintiff had a reasonable time in which to cure the defect. As a matter of fact, the plaintiff did obtain from the adjoining owner a deed conveying to her the title of the strip upon which the northerly half of the wall stood, so that when the plaintiff tendered a deed of the property to the defendant, the objection raised had been met. Nevertheless, the defendant still refused to carry out the oral agreement to purchase. The defendant, therefore, was forced to stand practically on the proposition that the contract to purchase was not enforceable because no note or memorandum in writing had been signed.

The rule in such cases is stated in *Collier* v. *Coates,* 17 Barb. 471: " * * * that where a person has paid money upon a parol contract for the purchase of lands, which is void by the statute of frauds, he cannot maintain an action to recover back the money so paid, so

long as the other party to whom the money has been paid is willing to perform * * *.'' See, also, *Maher v. Harrington Park Villa Sites*, 204 N. Y. 231, 237, and cases cited; *Graham* v. *Healy*, 154 App. Div. 76, 82.

We, therefore, hold that both the complaint and counterclaim should be dismissed, and under the circumstances, without costs to either party.

Judgment accordingly.